UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LAMARQUE FORD, INC.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 10-4355** |
| | * | |
| **FEDERAL INSURANCE CO.** | * | **SECTION "L" (5)** |

## ORDER & REASONS

Before the Court is a Motion for Summary Judgment filed by Defendant Federal Insurance Company (Rec. Doc. No. 14) and a Motion for Summary Judgment filed by Plaintiff Lamarque Ford, Inc. (Rec. Doc. No. 16). The Court has reviewed the submitted memoranda and applicable law and has heard the parties' oral arguments. For the following reasons, Defendant's motion is granted, and Plaintiff's cross-motion is denied.

## I. BACKGROUND

This case arises out of an insurance policy issued by Defendant Federal Insurance Company to Plaintiff Lamarque Ford, Inc. The insurance policy provides two forms of coverage.[1] Under Coverage A, the excess coverage, Defendant is to "pay on behalf of the insured, that part of loss covered by this insurance in excess of the total applicable limits of underlying insurance." The term "underlying insurance " refers to the primary insurance policy issued by the Legion Indemnity Company to Plaintiff. Under Coverage B, the umbrella coverage, Defendant is to "pay on behalf of the insured, damages the insured becomes legally obligated to pay . . . because of bodily injury, property damage, personal injury or advertising

---

[1] The content of the insurance policy is not disputed.

1

injury covered by this insurance."[2] The policy describes Coverage B as "a broadening measure of coverage against many of the gaps in and between the underlying coverage[]."

The policy sets forth, in a section called "Defense and Supplementary Payments," the conditions under which Defendant is to defend Plaintiff in a lawsuit. Paragraph A of the section states that Defendant has "the right and duty to assume [the] defense of any claim or suit against the insured for damages covered by this policy . . . under Coverage A, when the applicable limit of underlying insurance has been exhausted by payment of claims." Paragraph A further states that Defendant has the duty to defend Plaintiff "under Coverage B, when damages are sought for bodily injury, property damage, personal injury or advertising injury to which no underlying insurance or other insurance applies." The policy specifies that "[i]n those circumstances where Paragraph A above does not apply, we do not have the duty to assume [the] defense of any claim or suit against the insured."

In August 2002, a putative class action captioned *George Conrad et al. v. Lamarque Ford, Inc.* was filed in state court against Plaintiff. In May 2003, an amended petition for damages was filed, changing the caption of the lawsuit to *William Chauvin et al. v. Lamarque Ford, Inc.* In February 2008, following a class certification hearing, the trial court certified the suit as a class action encompassing "all persons who purchased a vehicle from Lamarque Ford from 1998 through the present, and who were entitled to a rebate, but whose purchase documents do not disclose that they received that rebate." In May 2008, the trial court denied Plaintiff's motion for reconsideration, and in May 2009, the Louisiana Court of Appeal affirmed. In November 2009, the Louisiana Supreme Court denied Plaintiff's application for a writ. The

---

[2] The term "advertising injury" includes, *inter alia*, defamation and invasion of privacy.

parties have informed this Court that the case is now back in the state trial court for further proceedings.

Plaintiff alleges that the insurance policy that it had with Legion Indemnity Company covered the claims asserted in the class action. Legion, however, has been declared insolvent, and it has been placed into a receivership. Thus, Plaintiff has turned to Defendant for defense and indemnity. Plaintiff avers that under both Coverage A and Coverage B of the insurance policy that is at issue, Defendant has the duty to defend Plaintiff in the class action. Defendant has refused to do so, however. In October 2010, Plaintiff filed suit against Defendant in state court, seeking an order directing Defendant to satisfy its duty to defend, as well as reimbursement for the defense costs that it has incurred thus far. In November 2010, Defendant removed the suit to this Court on the basis of diversity jurisdiction. In its answer, Defendant denied liability, asserting that under the applicable policy provisions, it has at present no duty to defend Plaintiff in the underlying class action.

## II. PRESENT MOTIONS

The parties have filed cross-motions for summary judgment addressing Plaintiff's claim for relief in this case.[3]

---

[3] Defendant correctly notes that Plaintiff, in its Complaint, also requested that Defendant be held liable "for all damages incurred, or which might be incurred by [Plaintiff] in the future, as to the allegations and claims as stated in the [underlying class action]." Because the underlying class action has not yet been resolved, this prayer for relief can only be understood as seeking a declaration of this Court that Defendant is liable for any damages for which Plaintiff itself might be liable in the underlying class action. In moving for summary judgment, however, Plaintiff has narrowed the issue down to Defendant's alleged duty to defend and the accompanying alleged obligation to indemnify Plaintiff for the defense costs incurred to date. The Court therefore finds that a ruling on the duty-to-defend question will dispose of this case in its entirety.

In its motion and in its opposition to Plaintiff's cross-motion, Defendant emphasizes that the language of the policy is controlling and that under the policy, it has a duty to defend as the excess insurer only if the underlying insurer has made payments that exhaust the limits of the underlying insurance. Defendant urges that this provision should be read in concert with the remainder of the policy, which specifies that the excess coverage "drops down" only by "payment of loss" on the part of the underlying insurer. Defendant observes that the policy language expressly does not make the excess coverage, or the associated duty to defend, dependent on the collectibility or recoverability of the primary coverage. Defendant points out that the underlying insurer has not made payments that exhaust the limit of the underlying policy. Defendant concludes that therefore, it is under no duty to defend Plaintiff.

In its cross-motion and in its opposition to Defendant's motion, Plaintiff argues that Defendant does have a duty to defend it in the underlying class action. Plaintiff finds it significant that in *American Home Assurance Co. v. Czarniecki*, 230 So.2d 253 (La. 1970), the Louisiana Supreme Court observed that an insurer's duty to defend is generally broader than the duty to indemnify. Plaintiff contends that under *Czarniecki*, as long as primary coverage could be exceeded, an excess insurer has the duty to defend an insured. In making this assertion, Plaintiff makes no reference to the actual language of the policy.

### III.  LAW AND ANALYSIS

### A. Standard of Review

A district court can grant a motion for summary judgment only when the "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). When considering a motion for summary

judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted).

**B. Whether Defendant Owes a Duty to Defend Plaintiff**

As noted above, Plaintiff's claim in this case is that Defendant owes a duty to defend it under the insurance policy. The first question is what law is to be applied in resolving this dispute. The second question is whether Plaintiff's claim has merits.

**1. The choice of law**

A federal court sitting in diversity must apply the conflict-of-law rules of the forum state. *Roberts v. Energy Dev. Corp.*, 104 F.3d 782, 786 (5th Cir. 1997). The Louisiana Civil Code provides that as a general matter, "cases having contacts with other states are governed by the

law selected in accordance with [the choice-of-law provisions] of this Code." La. Civ. Code art. 14. The Code, in turn, specifies choice-of-law rules for cases arising out of contracts. Article 3540 of the Code states that in general, "issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." *Id.* art. 3540. Article 3537, in turn, states that "an issue of conventional obligation is governed by the law of the state whose policies would be the most seriously impaired if its law were not applied to that issue." *Id.* art. 3537. A number of factors are relevant in identifying the state whose policies would be impaired. *See id.*[4]

Here, the insurance policy does not contain a choice-of-law clause, but the parties have assumed that Louisiana law is applicable. This suggests that Louisiana law is the body of law that has been "clearly relied upon by the parties." *Id.* art. 3540. In addition, it also appears that Louisiana is the state "whose policies would be the most seriously impaired if its law were not applied to [this dispute]." *Id.* art. 3537. Indiana and New Jersey are potentially implicated in this case, but this is so only because Defendant, the insurer, is organized under the laws of Indiana and has its principal place of business in New Jersey. In contrast, Louisiana has stronger

---

[4] Article 3537 provides that the following are relevant in determining the state whose policies would be most seriously impaired: "(1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other." La. Civ. Code art. 3537. The policies referred to in Article 3515 are "the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state." *Id.* art. 3515.

connections with this dispute. Plaintiff, the insured, is organized under the laws of Louisiana and does business principally in Louisiana. The policy was delivered to Louisiana, and the underlying lawsuit for which Plaintiff is seeking defense under the insurance policy has been litigated in Louisiana. Accordingly, the law of Louisiana is applicable.

## 2. The merits of Plaintiff's claim

Under Louisiana law, "[a]n insurance policy is a contract that constitutes the law between the parties," *Marcus v. Hanover Ins. Co., Inc.*, 740 So.2d 603, 606 (La. 1999); *see also* La. Civ. Code art. 1983, and it "should be construed using the general rules of interpretation of contracts set forth in the Civil Code," *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994). The overall task of a court is to determine "the common intent of the parties." La. Civ. Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences," the inquiry into the intent of the parties is at an end. *Id.* art. 2046. (providing that in such a situation, "no further interpretation may be made in search of the parties' intent"). Thus, when the words are clear and unambiguous, "courts must enforce the [insurance] contract as written." *Succession of Fannaly v. Lafayette Ins. Co.*, 805 So.2d 1134, 1137 (La. 2002) (citing La. Civ. Code art. 2046).

As noted above, the policy sets forth, in a section called "Defense and Supplementary Payments," the conditions under which Defendant is to defend Plaintiff in a lawsuit. That section distinguishes Defendant's duty to defend under Coverage A from its duty to defend under Coverage B. The policy states that Defendant has a duty to defend "under Coverage A, when the applicable limit of underlying insurance has been exhausted by payment of claims." Meanwhile, the policy provides that Defendant has the duty to defend "under Coverage B, when damages are

sought for bodily injury, property damage, personal injury or advertising injury to which no underlying insurance or other insurance applies." In light of this distinction, the duty to defend under Coverage A and the duty to defend under Coverage B must be analyzed separately.

**a. Duty to defend under Coverage A**

Defendant is correct in concluding that Coverage A does not impose upon it the obligation to defend Plaintiff in the underlying class action. The policy provides that Defendant has the duty to defend Plaintiff "under Coverage A, when the applicable limit of underlying insurance has been exhausted by payment of claims." It further states that "[i]n those circumstances where [the] above does not apply, we do not have the duty to assume [the] defense of any claim or suit against the insured." These statements, by their own terms, make it clear that the duty to defend under Coverage A is triggered only under one condition -- that is, if the primary insurer has made payments that reach the policy limit of the underlying insurance. The "clear and explicit" language of the policy does not contemplate that a duty to defend arises by virtue of any other contingency. La. Civ. Code art. 2046.[5]

---

[5] One argument that Defendant has made is that because its coverage has not "dropped down," it is under no duty to defend. Plaintiff complains that this contention is misdirected because the question of whether coverage "drops down" is distinct from the question of whether an insurer has a duty to defend. It is true that, as a conceptual matter, this is the case. "Dropping down" simply means that "the minimum threshold of the excess insurance company's obligation is lowered in order to cover the gap in coverage resultant from the primary insurance company's insolvency." *La. Ins. Guar. Ass'n*, 630 So.2d at 760 n.1 (internal citation and quotation marks omitted). It means that the excess insurer is to "provide coverage to the insured even though the underlying coverage has not been exhausted, usually because the underlying insurers are insolvent." *Black's Law Dictionary* 535 (8th ed. 2004). A rule could conceivably be fashioned to provide, and a policy could specify, that an excess insurer may have the duty to defend an insured regardless of whether "dropping down" takes place. But this is besides the point. What is controlling here is the language of the provision that specifically describes the circumstance under which Defendant owes Plaintiff a duty to defend.

This conclusion is consistent with the overall thrust of the policy. *See id.* art. 2050 (noting that a contract must be viewed "as a whole."). In a separate section called "Limits of Insurance," the policy specifically describes how Coverage A interacts with the underlying insurance. It states that "if the limits of underlying insurance have been reduced by payment of loss, this policy will drop down to become immediately excess of the underlying limit." Similarly, the policy states that "if the limits of underlying insurance have been exhausted by payment of loss, [it] will continue in force as underlying insurance." The policy makes no reference to the possibility that an underlying insurer may become insolvent. Instead, it contemplates that Defendant, as the excess insurer under Coverage A, becomes obligated to the insured only upon payment on the part of the underlying insurer.

Any doubt as to this fact is eliminated by the provision that describes the requirement that the insured must "maintain underlying insurance in full force" while the policy is, itself, in effect. That provision explains that the "limits of underlying insurance will not change except for any reduction in the aggregate limits of insurance by payment of loss." This additional provision underlines the fact that the only event that triggers any duty on the part of Defendant as the excess insurer is payment by the underlying insurer. By using the term "except for," the provision makes it plain that the insolvency of the underlying insurer is inconsequential. Thus, the remainder of the policy as to Coverage A consistently indicates that Defendant, as the excess insurer, becomes obligated to the insured only upon payment of loss by the underlying insurer. It dovetails the specific provision that is at issue -- which states that Defendant has the duty to defend Plaintiff under Coverage A if and only if the primary insurer has made payments that exhaust the underlying policy limit.

As indicated above, "[w]hen the words of an insurance contract are clear and explicit . . . , courts must enforce the [insurance] contract as written." *Succession of Fannaly*, 805 So.2d at 1137. The exception to this rule is if the enforcement of the unambiguous language would lead to "absurd consequences." *Id.* Here, however, it is difficult to say that it would be "absurd" to enforce the policy as it is written. Courts have widely recognized that an excess insurer may specify in the insurance policy that it has a duty to defend only if the primary insurer has exhausted its policy limit. *See, e.g.*, *Caldwell Freight Lines, Inc. v. Lumbermens Mut. Cas. Co., Inc.*, 947 So.2d 948, 958-59 (Miss. 2007). Courts have concluded that under such a provision, and in the absence of contrary policy language, the insolvency of the primary insurer does not trigger a duty to defend. *See* 4 New Appleman on Insurance § 24.06[4][a] (2009) (collecting cases concluding that "absent obligatory policy language, an excess insurer is not required to . . . provide the defense that an insolvent primary insurer was obligated to fund").

Courts have reached this conclusion because they have found that the relevant policy language compels such a conclusion, *id.*, but they have also discussed the rationale that underlies the limited nature of the excess insurer's duty to defend, *see La. Ins. Guar. Ass'n*, 630 So.2d at 767. The Fifth Circuit has indicated, for instance, that excess insurers charge relatively low premiums precisely because "the duty to defend rests primarily on the primary insurer." *Harville v. Twin City Fire Ins. Co.*, 885 F.2d 276, 279 (5th Cir. 1989).[6] The inexpensive premiums reflect an excess insurer's desire to limit its exposure and the insured's willingness to take on the

---

[6] The record in this case indicates that the insurance policy was in force for two years and that the premium for each year was $27,835. The policy limit was $5 million. Having thus paid premiums totaling $55,670, Plaintiff is now seeking to compel Defendant to take on, as the excess insurer, the costs of defending the class action suit in which it has been named as a defendant.

corresponding level of risk. *See id.* The Fifth Circuit has further stated that "[i]f excess liability carriers are required to defend in cases where the primary carrier would have defended except for insolvency, then the risk of the primary insurer's insolvency is placed on the excess carrier." *Id.* This is at odds with the idea that "[e]xcess insurers are not required to scrutinize primary insurers' financial stability . . . or to guarantee that the insured's choice of primary carriers will always be sound." *Steve D. Thompson Trucking, Inc. v. Twin City Fire Ins. Co.*, 832 F.2d 309, 311 (5th Cir. 1987).

In light of the above, it is doubtful that the policy's narrow definition of the insurer's duty to defend is so extraordinary that it yields an "absurd" result that should preclude its enforcement as it is written. *See* La. Civ. Code art. 2046. Not surprisingly, Plaintiff does not attempt to advance such an argument. In fact, in asserting that Defendant owes it a duty to defend, Plaintiff makes no reference to any language in the policy that is at issue. Instead, Plaintiff argues that in *American Home Assurance Co. v. Czarniecki*, 230 So.2d 253 (La. 1970), the Louisiana Supreme Court adopted a rule that an excess insurer has an obligation to defend an insured so long as the primary layer of coverage could be exceeded. According to Plaintiff, because the petition for damages in the underlying class action may engender liability that exceeds the policy limit of the underlying insurance, Defendant is required to defend it in the class action.

Plaintiff's argument is not persuasive because it misreads the Louisiana Supreme Court's decision in *Czarniecki*. There, the Louisiana Supreme Court had to decide whether a primary insurer and an excess insurer were both liable for attorney's fees in light of their decision not to defend a father whose son was involved in an automobile collision and who was, as a result,

sued. *See id.* at 255, 259. The Court made the general observation that an "insurer's obligation to defend suits against its insured is broader than its liability for damage claims," *id.* at 259, and it went on to state that in light of the allegations in that case, there was "an obligation on the part of both insurers under their policies to defend the suit." *Id.* at 259-60.

The court's conclusion, however, reflects the specific language of the excess policy that was at issue. That excess policy stated that the excess insurer "shall defend any suit . . . seeking damages which are payable under the terms of this policy." *Id.* at 259. This all-inclusive language was identical to that of the primary policy. *Id.* It is for this reason that the court found it appropriate to apply to the excess insurer the well-settled principle that a primary insurer has a duty to defend so long as the lawsuit could engender liability that falls within its policy. *See id.* Thus, *Czarniecki* did not announce a rule that an excess insurer has a duty to defend so long as the primary layer of coverage could be exceeded. Its conclusion that the excess insurer had a duty to defend simply reflects the specific language of the excess policy that was at issue. As Defendant points out, the language of the excess policy here is very different.

An additional reason why *Czarniecki* cannot be plausibly read as announcing a rule that an excess insurer has a duty to defend that is independent of any policy language is that such a reading cannot be reconciled with fundamental precepts of the Civil Code. As the Louisiana Supreme Court has stressed, under the Code, "[a]n insurance policy . . . constitutes the law between the parties." *Marcus*, 740 So.2d at 606. The primacy of the insurance policy in determining the rights and obligations of an insurer is not altered simply because the insurer happens to be an excess insurer. In fact, in cases involving the duties of excess insurers, the Louisiana Supreme Court has repeatedly emphasized that "the controlling consideration . . . is

the language of the excess policy." *La. Ins. Guar. Ass'n*, 630 So.2d at 762 (citing *Kelly v. Weil*, 563 So.2d 221, 222 (La. 1990); *Nasello v. Transit Cas. Co.*, 530 So.2d 1114, 1115 (La. 1988)).

Of course, it is true that contractual provisions are not the only rules of decision that may be applicable to an insurance dispute. The Louisiana Legislature has enacted an insurance code, which also imposes on insurers various duties. La. Rev. Stat. Ann. § 22:1 *et seq.* However, Plaintiff has not suggested, and a review of the insurance code does not reveal, that excess insurers have a statutory duty to defend an insured so long as its coverage could be implicated. In the absence of such a statutory provision, and given that the words of the insurance policy in this case "are clear and explicit and lead to no absurd consequences," La. Civ. Code art. 2046, this Court "must enforce the [insurance] contract as written," *Succession of Fannaly*, 805 So.2d at 1137. As noted, the policy unambiguously provides that Defendant has the duty to defend Plaintiff under Coverage A if and only if the primary insurer has made payments that exhaust the policy limit. It is undisputed that at this time, Legion has not made such payments. Accordingly, Defendant has at present no duty to defend Plaintiff under Coverage A of the policy.

**b. Duty to defend under Coverage B**

It remains to be seen whether Defendant has a duty to defend Plaintiff under Coverage B of the policy. As noted above, the policy provides that a duty to defend under Coverage B arises "when damages are sought for bodily injury, property damage, personal injury or advertising injury to which no underlying insurance or other insurance applies." The policy further states that "[i]n those circumstances where [the] above does not apply, we do not have the duty to assume [the] defense of any claim or suit against the insured." Defendant suggests that because the underlying insurance covers the class action, it has no duty to defend Plaintiff under

13

Coverage B. Defendant has the correct argument.

The "clear and explicit" language of the policy provides that there is no duty to defend if the damages are sought for injuries to "which underlying insurance . . . applies." La. Civ. Code art. 2046. Here, it is undisputed that the primary insurance policy issued by Legion provides coverage for the underlying class action. Accordingly, because the underlying insurance does apply, Defendant has no duty to defend Plaintiff under Coverage B. In its motion, Plaintiff briefly asserts that such a duty does exist, but it advances no argument independent of its contention, discussed above, that an insurer has a duty to defend an insured so long as the lawsuit could implicate coverage under the policy. As noted earlier, that argument is not grounded in the language of the policy that is at issue and is unpersuasive. The Court therefore concludes that Defendant does not have a duty to defend Plaintiff under Coverage B.

## IV.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 14) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Rec. Doc. No. 16) is hereby **DENIED**. Plaintiff's claims are hereby **DISMISSED** with prejudice.

New Orleans, Louisiana, this 23rd day of May, 2011.

_____
UNITED STATES DISTRICT JUDGE